### DOW v. LEECRAFT.  (No. 8293.)

(Court of Civil Appeals of Texas. Galveston. Feb. 1, 1923.)

**1. Joint-stock companies and business trusts ⬅19—Evidence held to establish authority in representative of association to purchase land, so as to entitle broker to commission.**

Evidence *held* sufficient to establish that representatives of an unincorporated joint-stock association were authorized to bind the association in the purchase of property for which they had been negotiating, so as to entitle a real estate broker to his commission for selling the property.

**2. Evidence ⬅158(27)—Exclusion of evidence of provisions of declaration of trust held not error, where declaration was obtainable and not produced.**

Exclusion of testimony as to the provisions of a declaration of trust under which a motor company had been created *held* not error, where the declaration of trust itself, which was best evidence, was shown to have been obtainable and was not produced.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by A. S. Leecraft against Andrew Dow. From a judgment for plaintiff, defendant appeals. Affirmed.

Fulbright & Crooker, of Houston, for appellant.

E. T. Chew, of Houston, for appellee.

LANE, J. Appellee, A. S. Leecraft, filed this suit against appellant, Andrew Dow, to recover judgment for the sum of $2,000, alleged to be due him for his service as a real estate broker, in procuring a purchaser for certain real property belonging to appellant. The plaintiff alleged that the defendant, Andrew Dow, did place and list with him lots 9 and 10 and the adjoining 50 by 100 feet of lot 11 in block ——, south side of Buffalo Bayou, in the city of Houston, Harris county, Tex., for sale at a price of $65,000, he, Andrew Dow to retain the house then situated thereon; that is, defendant agreed with him to take the sum of $65,000 for said property, the defendant to have the right to move the house off of the same; that the terms of payment of the purchase price agreed upon were that the purchaser was to pay $10,833.33 cash, and the balance in 15 equal annual payments; that, for his service in making such sale, defendant agreed to pay him a commission of 5 per cent. on the first $15,000 of such purchase price and 2½ per cent. on the remaining $50,000 thereof; that thereafter he sold the property, upon the terms agreed upon between himself and defendant, to the Southern Motors Manufacturing Association, who was ready, able, and willing to purchase said property at the price and upon the terms agreed upon as above stated; and that defendant refused to make such sale, and thereby breached his contract with plaintiff. Wherefore he prays for his commission in the sum of $2,000.

The defendant answered by general demurrer and by general denial. The case was submitted to a jury upon three special issues, as follows:

"Special Issue No. 1. Did defendant, Andrew Dow, engage plaintiff, A. S. Leecraft, to procure for him (defendant) a purchaser of the property described in plaintiff's petition, (excepting the house thereon) for the sum of $65,000 upon terms of $10,833.33 cash and the balance to be paid by the purchaser in fifteen equal annual installments, as alleged in plaintiff's petition?

"Answer 'Yes' or 'No,' as you find the facts to be.

"If you answer the foregoing question 'No,' then you need not answer any of the following; but, if you answer it 'Yes,' then answer the following:

"Special Issue No. 2. Did defendant promise to pay plaintiff for procuring such purchaser a commission of 5 per cent. of the first $15,000

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the purchase price and 2½ per cent. of the remainder thereof?

"Answer 'Yes' or 'No,' as you find the fact to be.

"If you have answered the two foregoing questions 'Yes,' and only in that event, then answer the following:

"Special Issue No. 3. Did plaintiff, in pursuance of such engagement, produce to defendant a purchaser who was ready, able, and willing to purchase said property on said terms?

"Answer 'Yes' or 'No,' as you find the fact to be."

All three issues were answered in the affirmative, and judgment was thereupon rendered for the plaintiff for the sum of $2,000.

[1] That appellant, Dow, engaged appellee, Leecraft, to procure for him a purchaser of his property for the sum of $65,000, upon terms of $10,833.33 cash and the balance to be paid by the purchaser in 15 annual installments, and that he promised to pay appellee a commission of 5 per cent. on the first $15,-000 of the purchase price and 2½ per cent. on the balance thereof, should he procure such purchaser, as found by the jury, is not controverted on this appeal; that is, it is not insisted by appellant that there was not ample evidence to support the findings of the jury to that effect, nor does the appellant question the ability of the Southern Motors Manufacturing Association, the proposed purchaser, to pay for appellant's property upon the terms stated by appellee; but he does contend that there was no evidence to show that said association was either ready or willing to purchase appellant's property at the price and upon the terms proposed, in that said association was a trust estate or an unincorporated joint-stock association, managed by and under control of five trustees, and therefore the willingness of the association to purchase appellant's property could be shown only by showing that the trustees had passed a resolution authorizing such purchase, and that, as no such showing has been made, the court erred in submitting special issue No. 3 to the jury, and that the answer of the jury to such special issue is unsupported by the evidence.

He contends that plaintiff made no showing that he dealt with any one who was authorized to bind the association; that it is shown that the only persons he dealt with purporting to represent the association were J. F. McGrath, sales manager and active assistant to the active vice president of said association, and C. E. Shively, secretary and treasurer, and who was also one of the five trustees of the association, and that it was not shown that either of these persons were authorized to make a contract for the purchase of appellant's property which would bind said association, and that the acts of said persons were no proof that the association was ready or willing to purchase said property.

248 S.W.—69

Conceding, as contended by appellant, that neither the active vice president, the active first assistant vice president, and the secretary and treasurer of this association, who was also one of the trustees, nor any one of them, could, without authority of the board of trustees, make a binding contract for the purchase of appellant's property by the association, we are still unable to sustain appellant's contention upon that ground, or to seriously consider the same as any reason for a reversal of the judgment in favor of appellee, in that it was shown that appellant was fully advised that the negotiations for the sale of his property to the association were between appellee and the persons named as the representatives of said association; that he knew that they were negotiating as such representatives, and not withstanding such knowledge he made no objection to carrying out his contract of sale of his property upon the grounds that such representatives could not bind the association, but, on the contrary, it was shown by ample evidence that his refusal to go forward with his contract was based solely upon the ground that he wanted $75,000 for his property, instead of $65,000 offered therefor by the association.

However, for a much stronger reason, we refuse to sustain appellant's contention. There was, we think, sufficient evidence to support a finding that the trustees of the association had authorized the purchase of the property. While there is much evidence of facts and circumstances tending to show the authority of the negotiating representatives of the association to contract for the purchase of appellant's property for the association, we shall specifically refer to the testimony of C. E. Shively only. This witness testified that he was secretary and treasurer and one of the trustees of the association; that he issued the certified check in behalf of the association, for the sum of $10,833.33, which was tendered to appellant as first payment on said property in accordance with the contract of sale; that Mr. McGrath, active first assistant to the active vice president, was given authority to represent the association in the purchase of said property by Mr. Reid, active vice-president of the association; that he (Shively) passed on the proposed purchase and issued the check tendered to appellant for the purpose of binding the deal after the agreement to purchase had been entered into; that he had a copy of the declaration of "trust" in his office, *and that Mr. M. J. Cain, secretary of the Association, had the minutes covering the proposed purchase of appellant's property*, at his office in the Beaty Building in the city of Houston, and that such minutes could be obtained by the issuance of a subpoena duces tecum for M. J. Cain.

[2] We overrule appellant's assignment

complaining of the refusal of the court to permit appellant to give his testimony as to his knowledge of the provisions of the declaration of trust under which the Southern Motors Company was created, as to what powers were thereby conferred upon or withheld from any one of the trustees or any officer of said concern. The declaration of trust was the best evidence of its provisions, and it was shown that it could have been obtained by appellant. It is apparent that the testimony sought was purely hearsay and not admissible.

We have examined and considered the remaining assignments of appellant, and we overrule the same without further discussion. Having reached the conclusions above expressed, the judgment is affirmed.

Affirmed.